**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KATHY FULTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:20-cv-782-CWB** |
| | ) | |
| **KILOLO KIJAKAZI,**[1] | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction and Administrative Proceedings**

Kathy Fulton ("Plaintiff") filed an application for Disability Insurance Benefits under Title II on April 10, 2018, wherein she alleged a disability onset of December 1, 2016 due to bipolar disorder and generalized anxiety disorder.  (Tr. 14, 63-64, 70).[2]  The claim was denied at the initial level on June 5, 2018, and Plaintiff requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 14, 70, 76, 82-84).  The ALJ heard the case on November 13, 2019, at which time testimony was given by Plaintiff (Tr. 14, 30-56) and by a vocational expert (Tr. 56-62). The ALJ took the matter under advisement and issued a written decision on January 3, 2020 that found Plaintiff not disabled.  (Tr. 14-24).  The ALJ's written decision contained the following enumerated findings:

---

[1] Kilolo Kijakazi became Acting Commissioner for the Social Security Administration on July 9, 2021 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to transcript pages are denoted by the abbreviation "Tr."

1

1. Ms. Fulton last met the insured status requirements of the Social Security Act on September 30, 2017 (Exhibit C5D/1).

2. Ms. Fulton did not engage in substantial gainful activity during the period from her alleged onset date of December 1, 2016 through her date last insured of September 30, 2017 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: Bipolar disorder and generalized anxiety disorder (GAD) (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I found that, through the date last insured, Ms. Fulton retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels. Ms. Fulton had significant nonexertional limitations. Ms. Fulton could perform simple, routine, and repetitive tasks, but not at a production-rate pace as would be found in assembly-line work. She could use judgment for making and dealing with changes in work setting by making simple work-related decisions. She could occasionally interact with supervisors, co-workers, and the public. She could deal with occasional changes in work setting, again via simple decision-making. She could occasionally climb ramps and stairs. She could not climb ladders, ropes, or scaffolds. Ms. Fulton could not operate a motor vehicle as part of job duties. She could not work around moving mechanical parts or at unprotected heights.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The Act identified Ms. Fulton, born on May 15, 1968, as a younger individual age 45-49, on her date last insured (20 CFR 404.1563).

8. Ms. Fulton has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because the RFC finding limited Ms. Fulton to unskilled work.

10. Through the date last insured, considering Ms. Fulton's age, education, work experience, and residual functional capacity, jobs that existed in significant numbers in the national economy that she could have performed (20 CFR 404.1569 and 404.1569(a)).

11. I found Ms. Fulton not disabled, as defined in the Social Security Act, at any time from December 1, 2016, her alleged onset date, through September 30, 2017, her date last insured (20 CFR 404.1520(g)).

(Tr. 17, 18, 19, 20, 22, 23).

On August 24, 2020, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration. (Doc. 1 at pp. 1-2; Doc. 18 at p. 17). As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to entry of final judgment by a United States Magistrate Judge (Docs. 8 & 9), and the undersigned finds that the case is now ripe for review pursuant to 42 U.S.C. § 405(g). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the final decision is due to be AFFIRMED.

## II.    Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the

decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Despite the deferential nature of its review, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]  To make such a determination, the ALJ employs a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

question, or, on steps three and five, to a finding of disability.  A negative answer
to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357
F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).
A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the
burden of proof from step one through step four.  *Id.*  At step five, the burden shifts to the
Commissioner, who must then show that there are a significant number of jobs in the national
economy that the claimant can perform.  *Id.*

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual
Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is
still able to do despite the claimant's impairments and is based on all relevant medical and other
evidence.  *Id.*  It may contain both exertional and nonexertional limitations.  *Id.* at 1242-43.  At
the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to
determine if there are jobs available in the national economy that the claimant can perform.  *Id.* at
1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R.
pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id.* at 1239-40.  The grids allow the
ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak
English, educational deficiencies, and lack of job experience.  Each factor can independently limit

---

[4] *McDaniel* is a Supplemental Security Income case.  Nonetheless, the same sequence applies to
claims for disability insurance benefits brought under Title II.  SSI cases arising under Title XVI
therefore are appropriately cited as authority in Title II cases, and vice versa.  *See, e.g., Ware v.
Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874,
876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a
person has a disability is the same for claims seeking disability insurance benefits or supplemental
security income.").

the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

## III.    Issues on Appeal

Plaintiff raises two issues on appeal: (1) whether the ALJ properly evaluated the medical opinions of Shawn Harvey, M.D., in assessing Plaintiff's mental RFC; and (2) whether the ALJ properly evaluated the subjective statements of Plaintiff and Plaintiff's mother.  (Doc. 18 at p. 2).

## IV.    Discussion

### A.    Failure to Properly Evaluate the Medical Opinion of Dr. Shawn Harvey

Plaintiff contends that the ALJ's decision does not properly articulate how the ALJ considered the consistency and supportability of the medical opinion of Dr. Harvey, the treating board-certified psychiatrist, along with the other factors under 20 C.F.R. § 404.1520c(a), (c), in determining the persuasiveness of that opinion.  (Doc. 18 at p. 10).  In response, the Commissioner contends that Plaintiff failed to meet her burden of proving that she was disabled, as Plaintiff fails to cite evidence during the relevant period of December 1, 2016 to September 20, 2017 that supports and is consistent with Dr. Harvey's opinion from August 19, 2019.  (Doc. 21 at pp. 6-8).

Because Plaintiff's claim was filed on April 10, 2018 (Tr. 14), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017.  *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The revised regulations no longer use the phrase "treating source," but instead use "your medical source(s)."  *See* 20 C.F.R. § 404.1520c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, at *5 (N.D. Ala. July 22, 2021).  For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. § 404.1520c(a);

*Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(a), (c). "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. § 404.1520c(a), (b)(2); *Simon*, 2021 WL 4237618, at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, at *4 (M.D. Fla. Apr. 14, 2022). "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309, at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616,

2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050, at *3 (M.D. Ala. June 23, 2022).  Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id.* at *4 (citation omitted); 20 C.F.R. § 404.1520c(b)(2).  And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).  Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ... Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 404.1545(a) ("Your residual functional capacity is the most you can still do despite your limitations.").  "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646, at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the

record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted). Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, at *4 (S.D. Ala. Mar. 9, 2022).

"A claimant must have insured status based on employment earnings in order to qualify for disability and DIB." *Thomas-Joseph v. Comm'r of Soc. Sec.*, No. 21-11020, 2022 WL 1769134, at *1 (11th Cir. June 1, 2022). To be eligible for disability insurance benefits, "a claimant must demonstrate a disability on or before the last date on which he was insured." *Caces v. Comm'r, Soc. Sec. Admin.*, 560 F. App'x 936, 939 (11th Cir. 2014) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); 42 U.S.C. § 423(a)(1)(A), (c)(1); 20 C.F.R. § 404.131 ("To establish a period of disability, you must have disability insured status[.]"). Because Plaintiff's date last

insured was September 30, 2017 (Tr. 17), his appeal requires a showing of disability on or before

that date. *See Moore*, 405 F.3d at 1211. "A claimant who becomes disabled after [he] loses insured

status must be denied disability insurance benefits despite h[is] disability. *Thomas-Joseph*,

2022 WL 1769134, at *1 (citing *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).[5]

Thus, Plaintiff must have shown that she was disabled from the date of alleged onset, December

1, 2016, through her date last insured, September 30, 2017.

Here, the record shows that the ALJ properly applied the regulations in considering the

persuasiveness of Dr. Harvey's opinion in conjunction with the record as a whole. The ALJ

ultimately found that Plaintiff's allegations concerning the intensity, persistence, and limiting

effects of her symptoms were "not fully supported in light of her positive response to mental health

treatment and generally normal mental status examination findings," and that the RFC and other

findings were "consistent with the medical record as a whole and address[ed] the substantiated

allegations of [Plaintiff.]" (Tr. 21, 22). In discussing the objective medical evidence during the

relevant period, the ALJ stated:

> Ms. Fulton's medical record included diagnoses of bipolar disorder and generalized
> anxiety disorder (GAD) between her alleged onset date on December 1, 2016 and
> her date last insured. Her treatment history for those impairments included both
> inpatient and outpatient treatment, but she only required outpatient psychiatric
> medication management and therapy between December 2016 and September
> 2017. The psychiatric treatment notes showed that medications effectively
> managed the effects of Ms. Fulton's bipolar disorder and GAD. Other than a single
> instance of presenting with preoccupied thought content, mental status
> examinations produced generally normal results with consistent findings of intact
> attention, concentration and memory. Ms. Fulton had at least fair judgment and
> insight, and no signs of consistent or persistent behavioral or cognitive
> abnormalities between December 2016 and September 2017. She also did not
> demonstrate or report any significant side effects from her psychiatric medications
> during that period. Those findings revealed that medical professionals provided

---

[5] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions
of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are
binding in the Eleventh Circuit).

Ms. Fulton with appropriate and effective mental health treatment through her date last insured.

(Tr. 18, 21, 662-67).

The ALJ also considered an October 2019 treatment history and narrative statement by therapist William B. Cole, a licensed professional counselor.  (Tr. 18).  The ALJ noted the following:

> [Dr. Cole] largely discussed Ms. Fulton's self-reported functioning and symptoms. Mr. Cole's statement did not directly contain objective medical evidence or address Ms. Fulton's response to therapy through her date last insured. However, Dr. Cole's statement did show that Ms. Fulton required outpatient psychiatric medication management and therapy between December 2016 and September 2017.

(Tr. 18, 699-702).

As to the opinion evidence, the ALJ stated:

> I considered the State Disability Determination Service's (DDS) psychiatric consultant's prior administrative findings. In June 2018, Robert Estock, M.D., assessed Ms. Fulton's mental condition and determined that she had severe attention deficit disorder (ADD), bipolar disorder, and GAD. Yet, Dr. Estock also found that the record did not contain sufficient evidence for him to set out a mental RFC finding. Thus, other than finding a severe mental impairment, Dr. Estock did not present me with an opinion that I could assess. The lack of evidence during the period at issue caused me to keep the record open and to admit additional evidence. Unfortunately, for Ms. Fulton, it is difficult to prove disability between 2016 and 2017 in 2019. Exhibits C8F-C12F all related to treatment in 2018 and 2019.

(Tr. 22, 66-69).

With respect to Dr. Harvey's opinion, the ALJ stated:

> Although well after the period under review here, I considered the opinion that Shawn Harvey, M.D., prepared in August 2019. Dr. Harvey indicated that Ms. Fulton had experienced multiple extreme and marked mental limitations since December 1, 2016. He conveyed that opinion by circling answers on a form. Yet, Dr. Harvey did not explain his conclusions. Thus, I found this opinion unpersuasive. I also questioned how relevant an opinion expressed in August 2019, could be relevant to a case that concerned Ms. Fulton's condition prior to September 30, 2017. (Exhibit C9F/2-4.) Dr. Harvey did not indicate when he started treating Ms. Fulton.

(Tr. 22, 696-98).

Contrary to Plaintiff's assertions, the ALJ, consistent with the revised regulations, sufficiently evaluated the persuasiveness of Dr. Harvey's opinion, which was prepared on August 19, 2019.  In a multiple-choice form, Dr. Harvey opined that Plaintiff had marked or extreme mental limitations in various areas of function.  (Tr. 696-97).  Dr. Harvey did not cite any objective evidence from the relevant period in support of his opinion.  Although there was no room on the form for the doctor to explain how the medical evidence supported each of his individual responses, there was a section at the end of the form that provided room for "additional comments," to which Dr. Harvey did not provide any.  (Tr. 698).  Dr. Harvey marked "yes" that the limitations identified in the form related back to December 1, 2016 to the present.  (Tr. 698).

Plaintiff asserts that Dr. Harvey's 2019 opinion is supported by objective evidence gleaned through treatment of Plaintiff during the relevant period.  (Doc. 18 at p. 6).  Plaintiff cites Dr. Harvey's medical record from February 28, 2017 when Plaintiff reported persistent trouble concentrating and symptoms of irritability, anxiety, and problems focusing.  (Doc. 18 at pp. 3, 6, citing Tr. 664).  Dr. Harvey's mental status examination revealed: a depressed and apathetic mood; a restricted and blunt affect; a preoccupation with obsessions, compulsions, and phobias; and fair insight and judgment.  (Tr. 665).  Dr. Harvey diagnosed her with bipolar disorder and generalized anxiety disorder ("GAD") and made no changes to her prescribed medications: Ambien,[6] Celexa,[7]

---

[6] Ambien (Zolpidem) is used to treat insomnia.
*See* https://medlineplus.gov/druginfo/meds/a693025.html

[7] Celexa (Citalopram) is an antidepressant.
*See* https://medlineplus.gov/druginfo/meds/a699001.html

Depakote,[8] and Buspar.[9]  (Tr. 665).  Plaintiff argues that the ALJ erred by not comparing the opinion of Dr. Harvey against abnormal findings in treatment records from the period at issue and that the ALJ impermissibly relied on the ALJ's own lay opinion in reaching a determination that Plaintiff was not as limited as described by Dr. Harvey as her treating psychiatrist.  (Doc. 18 at p. 8).

However, in the ALJ's decision, the ALJ cited Dr. Harvey's medical findings from February 28, 2017.  (Tr. 18, 662-67).  Dr. Harvey's February 28, 2017 record also showed that Plaintiff was cooperative, was well-groomed, had normal speech and appropriate thought content, was alert and oriented, had intact memory and attention/concentration, and exhibited fair insight and judgment.  (Tr. 665).  In light of such normal findings, Dr. Harvey's opinion that Plaintiff had marked or extreme limitations was unsupported by Dr. Harvey's treatment record and the ALJ therefore properly found the opinion unpersuasive.

Also, Dr. Harvey's medical record from November 8, 2016, predating the alleged onset date, showed that Plaintiff was cooperative, was well-groomed, had normal speech, had euthymic mood, had appropriate affect and thought content, had logical thought process, was alert and oriented, had intact memory and attention/concentration, and exhibited fair insight and judgment. (Tr. 667).  Dr. Harvey's medical record from November 2017, postdating Plaintiff's date last insured, showed that Plaintiff's mood was stable and that  she was cooperative, was well-groomed, had normal speech, had euthymic mood, had appropriate affect and thought content, had logical thought process, was alert and oriented, had intact memory and attention/concentration, and

---

[8] Depakote (Divalproex) is used to treat mania in people with bipolar disorder and is also used to prevent migraine headaches.  *See* https://medlineplus.gov/druginfo/meds/a682412.html

[9] Buspar (Buspirone) is used to treat anxiety.
*See* https://medlineplus.gov/druginfo/meds/a688005.html

exhibited good insight and judgment. (Tr. 662-63).   The ALJ also found that psychiatric medication management and therapy effectively controlled Plaintiff's mental health symptoms as demonstrated by Dr. Harvey's mental status examinations, which generally showed normal results that included consistent observations of intact attention and concentration and memory, at least fair judgment and insight, and no signs of consistent or persistent behavioral or cognitive abnormalities.  (Tr. 18, 21, 663, 665, 667).

Although the ALJ did not use any "magic words" in evaluating Dr. Harvey's opinion, the record reflects that the ALJ met the articulation requirement of 20 C.F.R. § 404.1520c(b)(2) in determining the supportability and consistency of Dr. Harvey's opinion, regardless of the specific language used.  *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021) ("While he may not have used the words 'supportability' and 'consistency,' the ALJ's discussion of Dr. Birkmire's opinions and findings regarding the record was based on those factors.").

Plaintiff argues that the opinion and findings of Dr. Harvey are also supported by and consistent with a report from Plaintiff's treating therapist, William B. Cole.  (Doc. 18 at p. 8). However, the ALJ found that Dr. Cole's report did not directly contain objective medical evidence or address Plaintiff's response to therapy through her date last insured and that the report largely consisted of Plaintiff's self-reported functioning and symptoms.  (Tr. 18, 699-702).  The ALJ noted that Dr. Cole's statement showed that Plaintiff required outpatient psychiatric medication management and therapy between December 2016 and September 2017.  (Tr. 18, 699-702). Plaintiff does not cite to anything specific in Dr. Cole's report in which the ALJ failed to consider or that undermines the ALJ's findings.

14

Plaintiff also argues that the ALJ erred to the extent that the ALJ solely rejected Dr. Harvey's opinion because it was prepared in August 2019 when Plaintiff's date last insured was September 30, 2017.  (Doc. 18 at p. 9).  The Eleventh Circuit has adopted the position that "a treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date."  *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (*superseded by statute on other grounds*).  However, "in the absence of corroborating medical evidence," an ALJ may discount a treating physician's opinion that the plaintiff suffered a disability during the relevant disability period.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011); *see id*. ("Where the medical record contained a retrospective diagnosis, that is, a physician's post-insured-date opinion that the claimant suffered a disabling condition prior to the insured date, we affirm only when that opinion was consistent with pre-insured-date medical evidence."); *Garvey v. Astrue*, No. 1:07-cv-00021, 2007 WL 4403525, at *7 (N.D. Fla. Dec. 12, 2007) ("In this circuit, especially, the ALJ must point to substantial evidence in the record to discount the opinion of a treating physician, whether retrospective, contemporary, or prospective."); *Yoder v. Colvin*, No. 8:14-CV-440, 2015 WL 769931, at *3 (M.D. Fla. Feb. 23, 2015) ("The plaintiff is correct that the remoteness of the opinion is, by itself, an insufficient basis to discount the opinion of a treating physician. Thus, a treating physician's opinion, even when it is retrospective, is entitled to substantial weight in the absence of good cause to discount it.").[10]

---

[10] The court notes that the SSA abrogated the treating-physician rule, and thus, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a); *Harner*, 38 F.4th at 894 ("The new regulation instructs administrative law judges to give a treating physician's opinion no deference and instead to weigh medical opinions based on their persuasiveness.").

The ALJ considered Dr. Harvey's opinion under 20 C.F.R. § 404.1520c and found that Dr. Harvey's multiple-choice form was unpersuasive as Dr. Harvey did not explain his conclusions.  (Tr. 22).  The ALJ considered the relevancy of Dr. Harvey's opinion that was given almost two years after the date last insured, but the ALJ did not rely on that as a sole factor in considering the opinion.  (Tr. 22).  The ALJ also considered the medical treatment records during the relevant period, which did not support Dr. Harvey's findings of extreme and marked limitations since December 1, 2016.  (Tr. 18, 22).  While Dr. Harvey opined that Plaintiff had extreme impairment of her ability to maintain attention and concentration for extended periods, he observed that Plaintiff had intact attention/concentration (Tr. 18, 21, 665, 697).  Moreover, despite observing that Plaintiff had intact memory, average fund of knowledge, fair insight and judgment, and appropriate thought content, Dr. Harvey opined that Plaintiff had extreme impairment of her ability to understand, remember and carry out simple instructions.  (Tr. 18, 21, 665, 696).  Thus, the ALJ's decision to find that Dr. Harvey's opinion was unpersuasive was supported by substantial evidence.

Plaintiff argues that the ALJ failed to examine all of the relevant factors and articulate how persuasive he found the opinion of Dr. Harvey, a treating specialist, based on a meaningful application of all of the factors in 20 C.F.R. § 404.1520c(c)(3)-(5).  (Doc. 18 at pp. 10-11).  Plaintiff further argues that because the ALJ failed to cite to any specific medical facts or even persuasive non-medical evidence in the record that supports Plaintiff's mental RFC determination, that the ALJ's decision was impermissibly based on the ALJ's lay interpretation of the clinical and objective medical evidence.  (*Id*. at p. 11).

As stated above, "the task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor," *Moore*, 649 F. App'x at 945, and "[a]n ALJ may 'distill a claimant's RFC

from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'" *Tolbert*, 2022 WL 4591646, at *2 (citation omitted); 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c).  While an ALJ must consider the supportability and consistency factors when determining the persuasiveness of a medical source's medical opinions or prior administrative medical findings, the ALJ may but is not required to explain how he considered the other factors under 20 C.F.R. § 404.1520c(c)(3)-(5).   *See* 20 C.F.R. § 404.1520c(b)(2).  Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nor is an ALJ "required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.  *Coley*, 771 F. App'x at 917.

Here, the ALJ considered Plaintiff's treatment history during the relevant period and noted: that she only required outpatient psychiatric medication management and therapy between December 2016 and September 2017; that medications effectively managed the effects of her bipolar disorder and GAD; that other than a single instance of presenting with preoccupied thought content, mental status examinations produced generally normal results with consistent findings of intact attention, concentration and memory; that she had at least fair judgment and insight, with no signs of consistent or persistent behavioral or cognitive abnormalities between December 2016 and September 2017; and that she did not demonstrate or report any significant side effects from her psychiatric medications during that period.  (Tr. 18, 21, 662-667).  Thus, the ALJ explained that the entire treatment history during the relevant period demonstrated conservative care and normal to mild objective findings.

In sum, the ALJ sufficiently considered the supportability and consistency of Dr. Harvey's opinion under 20 C.F.R. § 404.1520c and considered the record as a whole in determining

Plaintiff's RFC.  Plaintiff had the burden of proving that she was disabled but failed to provide evidence to support her claim that she was disabled during the relevant period.  *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013) (citing *Ellison*, 355 F.3d at 1276) ("The claimant bears the burden of proving that she is disabled, and, thus, is responsible for producing evidence to support her claim.").  Plaintiff "'must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.'"  *Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185, at *7 (M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam)); *Lanier v. Colvin*, No. CV414-004, 2015 WL  3622619, at *1 (S.D. Ga.  June 9, 2015) ("The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158-59).  Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand."  *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679, at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F.App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

**B.      Failure to Properly Evaluate Plaintiff's Subjective Statements**

Plaintiff contends that the ALJ grossly mischaracterized the record by describing mental status examinations from the relevant period as "generally normal" and that the ALJ failed to cite to substantial evidence that Plaintiff had significant or sustained improvement to a degree that conflicted with her subjective statements.  (Doc. 18 at p. 14).  Plaintiff also contends that the ALJ failed to properly evaluate the statements from Plaintiff's mother, Gloria Griggs, who completed a written statement regarding Plaintiff on May 31, 2018.  (*Id*. at pp. 15-16).  Plaintiff further argues that the ALJ failed to consider her "honorable" work history in evaluating her subjective statements.  (*Id*. at p. 16).

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent that they are reasonably consistent with objective medical evidence and other evidence.  20 C.F.R. § 404.1529(a).  The Commissioner will consider a claimant's statements about his or her symptoms and any description that claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work.  *Id*.  However, a claimant's statements about pain or symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.  *Id*.; SSR 16-3p, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596, at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  The regulations set out a two-step process for the evaluation of subjective complaints.  *Id*.; SSR 16-3p, 2017 WL 5180304, at *3. To establish a disability based on testimony of symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms, or (2) evidence establishing that the objectively determined medical

condition could be reasonably expected to give rise to the alleged symptoms.  *Carroll v. Soc. Sec.
Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503, at *12 (N.D. Ala. Aug. 29, 2022)
(citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. §§ 404.1529(a)-(b),
416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein
the SSA first considers whether an underlying medically determinable physical or mental
impairment exists that could reasonably be expected to produce the claimant's symptoms, such as
pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964, at *3 (M.D. Fla. July 19, 2022);
20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304, at *2-3.  Once an
underlying physical or mental impairment that could reasonably be expected to produce the
claimant's symptoms is established, the ALJ must then consider all of the evidence in the record
to evaluate the intensity and persistence of those symptoms to determine the extent to which the
symptoms limit the claimant's capacity for work.  SSR 16-3p, 2017 WL 5180304, at *3-4;
20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL
1205347, at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908,
2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).  In doing so, SSR 16-3p and the regulations require
an ALJ to consider certain factors, including: (1) daily activities; (2) location, duration, frequency,
and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type,
dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than
medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other
symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain
or other symptoms. SSR 16-3p, 2017 WL 5180304, at *8-9; 20 C.F.R. § 404.1529(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant.  20 C.F.R. § 404.1529(c)(4). "However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision." *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335, at *5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (concluding that the ALJ need not cite to "particular phrases or formulations," but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).  If the ALJ discredits a claimant's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058, at *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding." *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582, at *2 (11th Cir. May 16, 2022) (citing *Foote*, 67 F.3d at 1562).  "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260, at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell*, 771 F.3d at 782).

Here, the record reflects that the ALJ sufficiently addressed Plaintiff's subjective statements in accordance with the regulations.  The ALJ first considered Plaintiff's Function Report, in which she wrote that she had problems with her memory, with understanding and

following instructions, with concentrating, with completing tasks, and that she had social interaction problems, which included getting along with others and managing stress or changes in routine. (Tr. 20, 193-94).  The ALJ also considered the 2018 Function Report and third-party questionnaire prepared by Plaintiff's mother, Gloria Griggs, which the ALJ found "largely echoed" Plaintiff's allegations. (Tr. 20, 174-184).  The ALJ then discussed Plaintiff's hearing testimony:

> Ms. Fulton testified about her mental condition at the November 13, 2019 hearing. She emphasiz[ed] that the effects of her bipolar disorder and GAD rendered her unable to work. She described having problems with her mood, poor memory and concentration, isolating herself, getting along with others and managing stress. She described hallucinations. Ms. Fulton alleged that she had difficulties performing even simple activities of daily living, such as tending to her personal care. She also recounted incidents where she had experienced conflict with co-workers and other incidents where she had gotten angry with a supervisor and lost her job. She reviewed her mental health treatment history, noting that her psychiatric medications helped but also contributed to her memory problems and interfered with her sleep.

(Tr. 21).

The ALJ, evaluating Plaintiff's testimony and her mother's statements with the factors outlined in SSR 16-3p, "found both inconsistent with the record as a whole" and "contrasted the statements regarding the alleged severity of [Plaintiff's] symptoms with her positive response to mental health treatment and generally normal mental status examination findings." (Tr. 21).  The ALJ explained that Plaintiff's medical records showed that she did not require inpatient psychiatric treatment during the period at issue and that psychiatric medication management and therapy effectively controlled her mental health symptoms as demonstrated by findings of intact attention, concentration, and memory, with fair to good judgment and insight, and no signs of persistent behavioral or cognitive abnormalities. (Tr. 18, 21, 663, 665, 667).  The ALJ noted that Plaintiff did not report significant side effects from her psychiatric medications, although in her testimony,

she alleged that her medications caused memory problems and interfered with her sleep.  (Tr. 21, 55, 662-67, 699-701).

Based upon the evidence in the record, the ALJ concluded:

After careful consideration of the evidence, I found that Ms. Fulton's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, I found her allegations concerning the intensity, persistence, and limiting effects of those symptoms not fully supported in light of her positive response to mental health treatment and generally normal mental status examination findings. ...

The residual functional capacity set forth above addressed Ms. Fulton's alleged symptoms to the extent that the medical record substantiated them. The mental, postural, and environmental limitations accommodated Ms. Fulton's moderate limitations caused by her bipolar disorder and GAD. I set out the postural and environmental limitations to accommodate the possible medication side effects.

(Tr. 21).

The record shows that the ALJ properly considered the entire administrative record in evaluating the consistency of Plaintiff's statements and adequately articulated reasons for finding Plaintiff's statements to be inconsistent with the record.  While Plaintiff may cite to some evidence that the ALJ did not specifically discuss, nothing requires the ALJ to discuss every piece of evidence so long as substantial evidence supports the ALJ's decision.  *Coley*, 771 F. App'x at 917; *Dyer*, 395 F.3d at 1211; *Gogel*, 2021 WL 4261218, at *9.  Further, while Plaintiff cites evidence that she believes supports her subjective complaints or contradicts the ALJ's assessment (Doc. 18 at pp. 12-17), that is not enough to obtain a remand when, as here, substantial evidence supports the ALJ's decision.  *Crawford*, 363 F.3d at 1158-59; *Mitchell*, 771 F.3d at 782.

Further, contrary to Plaintiff's assertions, the ALJ considered Plaintiff's mother's statements, finding that her statements were cumulative of Plaintiff's statements and testimony. Plaintiff does not cite any statements by Plaintiff's mother that provided any significant information that the ALJ failed to consider.  Further, the ALJ is "not required to articulate how

23

[he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d). "'Evidence from nonmedical sources is any information or statement(s) from a nonmedical source,' including testimony from the claimant and the claimant's family, 'about any issue in [the disability] claim.'" *Deerman v. Soc. Sec. Admin., Comm'r*, No. 4:20-CV-00943, 2022 WL 907179, at *6 (N.D. Ala. Mar. 28, 2022) (quoting 20 C.F.R. § 404.1513(a)(4)); SSR 16-3p, 2017 WL 5180304, at *7 ("Other sources may provide information from which [the agency] may draw inferences and conclusions about an individual's statements that would be helpful to [the agency] in assessing the intensity, persistence, and limiting effects of symptoms.").

As to Plaintiff's contention that the ALJ failed to consider her "honorable" work history as a favorable factor in the subjective symptom assessment, there is no authority requiring the ALJ to consider work history for purposes of a credibility determination. *Glover v. Saul*, No. 3:20-CV-05625, 2021 WL 5033974, at *10 (N.D. Fla. Oct. 18, 2021) (citing *Edwards*, 937 F.2d at 584) (rejecting plaintiff's argument that ALJ erred in failing to consider her good work history in determining her credibility where substantial evidence supported the ALJ's credibility determination); *Sickmiller v. Saul*, No. 8:19-CV-3087, 2021 WL 1186846, at *8 (M.D. Fla. Mar. 30, 2021); *Shelton v. Kijakazi*, No. CV 121-154, 2022 WL 3334454, at *8 (S.D. Ga. July 22, 2022), *report and recommendation adopted*, No. CV 121-154, 2022 WL 3330148 (S.D. Ga. Aug. 11, 2022) ("[N]othing in the regulations nor in binding precedent instructs that the ALJ must articulate how he considers a Plaintiff's work history for the purposes of his evaluation.").

"[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms." *Turner*, 2021 WL 3276596, at *9; 20 C.F.R. § 404.1529(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled."). As

explained above, the court finds that the ALJ properly evaluated Plaintiff's subjective complaints in light of the evidence of record and formulated appropriate RFC restrictions to accommodate the limitations arising from her mental impairments.  Credibility determinations are the province of the ALJ, *Mitchell*, 771 F.3d at 782, and the ALJ sufficiently cited evidence in the record for finding that Plaintiff's statements were not entirely consistent with the record as a whole.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (footnote omitted) (The appropriate question for a reviewing court "is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## V.     Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes that the Commissioner's decision is due to be **AFFIRMED**.  A separate judgment will issue.

**DONE** this the 30th day of March 2023.

                    _____

                    **CHAD W. BRYAN**
                    **UNITED STATES MAGISTRATE JUDGE**